UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 10-cr-00502-MSK

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.

1. **MICHAEL JACOBY,**
2. **DEREK ZAR,**
3. **SUSANNE ZAR a.k.a SUSANNE HAMES,**
4. MICHAEL MACY,

        Defendants.

---

**OPINION AND ORDER DENYING MOTION TO DISMISS INDICTMENT
AND ADDRESSING ADMISSIBILITY OF OPINION TESTIMONY UNDER
FED. R. EVID. 702**

---

**THIS MATTER** comes before the Court pursuant to the parties' Joint Motion For Rule 702 Hearing **(# 319)** and the presentation at a Rule 702 hearing on June 28, 2012; and Defendants Derek and Suzanne Zar's *Pro Se*[1] Motion to Dismiss Indictment **(# 413)**. The Court begins with the latter motion.

---

[1]The Court does not generally entertain *pro se* motions from Defendants who are represented by counsel, particularly in circumstances where there is an indication that counsel has actually considered the motion in question and affirmatively refused to participate in filing it. (The Zars' motion notes that their counsel have "refused to [file it] on their behalf.") The fact that experienced and knowledgeable defense counsel sees no merit in a given motion is a strong indication that the motion lacks merit. Here, the Court finds the contentions in the Zars' *pro se* motion to be meritless.

**A. Motion to Dismiss Indictment**

Mr. and Ms. Zar have jointly filed a *pro se* Motion to Dismiss, arguing that their statutory[2] right to a speedy trial has been violated. They contend that, in its December 17, 2010 oral ruling granting the Defendants' (including the Zars') motions to continue the trial date, the Court failed to make adequate factual findings to justify such a continuance under 18 U.S.C. §3161(h)(7)(A).

Some history is helpful. The Court initially set **(# 34)** a trial date in this action for December 20, 2010, within the Speedy Trial Act's 70-day deadline. 18 U.S.C. § 3161(c)(1). Shortly after the order setting the trial was issued, both Zars moved **(# 43, 49)** to continue that trial date for a period of 18 months. Both motions alleged that the factual and legal circumstances of the alleged fraudulent scheme presented a "complex" case under 18 U.S.C. § 3161(h)(7)(B)(ii), and further contended that the breadth of tendered discovery – some 30,000 pages of documents – and the unfamiliar issues relating to real estate required many months for adequate preparation of a defense under 18 U.S.C. § 3161(h)(7)(B)(iv). The Court heard those motions (and others) on December 17, 2010. A transcript of that motion hearing **(# 163)** reveals that Ms. Zar's counsel took the lead in arguing the motions, stating:

> we are seeking a trial date approximately 18 months from now. We submit that a combination of factors, including the length of the alleged fraudulent activities, which is about a one-and-a-half-year period, the fact that the government had about five years to do their investigation and commence prosecution of it, and the nature of the prosecution itself, combined with the volume of discovery, compels some lengthy continuance.
>
> Specifically, with regard to the nature of the prosecution, there are

---

[2]The Zars acknowledge that the Court's April 25, 2012 Opinion and Order **(# 365)** considered and found no speedy trial issue under the Sixth Amendment.

2

> multiple alleged fraudulent purchases and straw purchases of various sorts, and each of these, in turn, includes various acts which are alleged to be fraudulent and which include within each of these the creation, allegedly of documents that are supposedly fraudulent.
>
> Discovery itself, I think, has come in at somewhere around 30,000 pages. Most of that are, basically, source documents. Some of that are investigative reports.

After some additional colloquy with Ms. Zar's counsel, the Government, and Mr. Jacoby's counsel, Mr. Zar's counsel addressed the motions as well:

> The only thing I would like to add . . . [is] that although there weren't a significant number of transactions involved, the nature and – of these transactions are complex. I can tell the Court that they're certainly beyond my scope of expertise as a criminal defense lawyer and that most certainly an expert – at least one type of expert, possibly two, is going to be needed by – to assist me in even understanding what is involved in this case.
>
> Having said that, Your Honor, I will tell the Court I believe that my client is possibly involved in as many as 20 of these fraudulent activities [alleged], and I am only requesting that the Court exclude 12 months. I don't think 18 months is necessary, at least at this point.

The Government concurred in the request that the trial should be continued for a 12-month period, and did not dispute any of the representations made by the defense counsel as to the complexity of the case or the amount and nature of discovery at issue.

In granting the motion, the Court made the following oral findings:

> I appreciate the arguments made by counsel, and I also appreciate the complexity that a commercial transaction presents to criminal defense counsel, both in preparation for trial and, also, during trial. Having been through some of these trials, however, it is my experience that what appears to be somewhat so complex on the front end often turns out not to be complex once everybody understands the nature of the transactions.

> In this particular case, compared to other criminal actions of similar type, the fact that there are 30,000 documents is of no import because most of those documents are not going to probably be relevant. They are part of the documentation associated with real estate transactions, which I'm sure everyone in the courtroom has been through a real estate transaction once or twice, and you probably wondered why all those pieces of paper were there.
>
> So I think that this case is complex in that it involves at least 29 transactions, maybe more transactions. It has four defendants. These transactions may be structured in an elaborate fashion, and I appreciate the need of counsel to prepare an adequate defense. Therefore, I am technically going to find that the case is complex under 18 U.S.C. section 3171(h)(B)(ii), but I am also going to find that additional time beyond the calculation for speedy trial is necessary for the defendants to adequately prepare a defense in deference to due diligence pursuant to Section 3616(h)(7)(B)(iv).
>
> I find that the ends of justice are served by a continuance of this trial. I do not believe that it requires 18 months of preparation, and we all will have the pleasure of spending next December together [*i.e.* a 12-month continuance].

Contrary to the Zars' argument here – that the Court's oral findings consist only of "one conclusory statement that '[t]he ends of justice [are served]'" by a continuance – the findings quoted above specifically note particular facts warranting the conclusion that a 12-month continuance was appropriate. Among other things, the Court acknowledged "the complexity of . . . commercial transaction[s]" and that fact that criminal defense counsel are often not facile with the details and operation of such transactions, the fact that the discovery was voluminous (with the simultaneous recognition that redundant paperwork generated in real estate transactions makes reliance simply on the number of pages of discovery unrepresentative of the actual level of complexity), the fact that as many as 29 separate real estate transactions were involved (some or all of which may have been "structured in an elaborate fashion"), and the fact that four

separate Defendants were charged.[3]  The Court then expressly found that these facts justified an ends-of-justice continuance under two separate aspects of the Speedy Trial Act: they rendered the case sufficiently "complex" under § 3161(h)(7)(B)(ii) and they demonstrated the need for additional time for defense preparation, taking into account the exercise of due diligence, under § 3161(h)(7)(B)(iv). *Toombs*, 574 F.3d at 1268-69 (Court must consider the § 3161(h)(7)(B)(i)-(iv) factors in deciding whether to grant an ends-of-justice continuance).

Accordingly, the Court's findings are sufficiently specific as required by the statute, and the Zars' motion is DENIED.

### B. Rule 702 motion

The parties jointly moved for a pre-trial determination of the admissibility of certain opinion testimony by Curtis Novy, a witness proffered by Mr. Jacoby. The Court need not recite the general principles that govern the analysis of whether proffered opinion testimony is admissible under Fed. R. Evid. 702; it incorporates its extensive analysis of that subject in *U.S. v. Crabbe*, 556 F.Supp.2d 1217, 1221-25 (D.Colo. 2008), insofar as necessary herein.

### 1. Mr. Novy's qualifications

Mr. Novy holds a Bachelor of Arts Degree in Psychology awarded by California State Long Beach in 1982. He has held a California real estate broker's license for 20 years, a mortgage broker's license over a period of 18 years, and has engaged in real estate brokering

---

[3]In addition, the Court notes that the presentations by both Zars' counsels also identified certain additional, undisputed facts that further justified a continuance – *e.g.* Mr. Zar's counsel's anticipated need to consult with one or more experts in order to be able to ascertain the contours of the charges and Ms. Zar's counsel's representations as to the length of the Government's investigation. As noted in *U.S. v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009), the Court's findings may be deemed to implicitly incorporate undisputed factual representations by the parties that are "set forth in the motion for the continuance itself."

activities in California, Hawaii, and Colorado at undefined points in the past. At the time of the transactions in this case, 2005 -2006, Mr. Novy was neither licensed as a real estate broker in Colorado nor involved in transactions in Colorado.

From 1980 through 1997, Mr. Novy worked at various lending institutions in positions where he participated in or was responsible for loan underwriting and loan approvals. Beginning in 1997, he founded and has since operated a consulting firm that provides diverse services, including "mortgage fraud analysis/consultation to banks" and "mortgage brokerage of residential and commercial loans".

Mr. Novy has engaged in many real estate transactions for himself and others. In addition, he has been retained as an expert or confidential consultant in approximately 150 civil and criminal cases. A substantial portion of the 6,000 real estate and commercial loans identified in Mr. Novy's curriculum vitae [Ex. 444] were reviewed in this capacity. Due to confidentiality agreements and court orders, Mr. Novy testified that he cannot reveal the information he considered nor the methodology he used. Only 1,000 of these transactions occurred in the 2005-2006 time period.

**2. Challenged Opinions**

Opinion 1(b): The duty[4] of ensuring that the lender is aware of third party disbursements to the buyer rests with the closing agent.

The Government challenges only Mr. Novy's qualifications.

This opinion asserts that there is a custom or practice exists in the real estate industry that closing agents will advise lenders of third party disbursements. Mr. Novy acknowledges that he

---

[4]At the Rule 702 hearing, Mr. Jacoby clarified that the term "duty" in this context is not intended to reference a legally-imposed duty. Rather, it refers to a "custom and practice" in the real estate industry.

has never served as a closing agent.  However, he has received training in closing procedures from various sources and has participated in numerous closings.  Based on that experience, the Court finds that Mr. Novy has sufficient qualifications to render this opinion.  The objection is overruled.

    Opinion 1(c): The contract for sale and HUD-1 provide constructive notice to lenders that grant disbursements will be received by the buyer.

The Government objects to both Mr. Novy's qualifications to render this opinion and contends that he did not derive this opinion through reliable principles or methodologies.

The Court finds that Mr. Novy's experience and familiarity with sales contracts and HUD-1 statements in numerous transactions to be sufficient qualifications for him to render this opinion.  However, the Court finds that Mr. Novy did not articulate any particular experience, principle or methodology on which he based this opinion.

For this opinion, Mr. Novy referred to a single specific transaction, embodied by Exhibits 326 (a sales contract) and 330 (a HUD-1 for that sale).  He stated that although the contract of sale was a document between the buyer and seller, the lender would necessarily review it as part of the sales transaction.

He pointed out that the sales contract at Exhibit 326 contained text stating "The following documents are a part of this contract: tara grant docs."  Mr. Novy explained that this notation would make it "explicit" to the lender that "the buyer and seller have made some type of agreement that includes some kind of grant."  Mr. Novy then turned to the HUD-1 statement and noted that line 1304 of that statement indicated that approximately $54,000 of funds provided by the lender were allocated to "Grant to Tera Grant."  Mr. Novy stated that this information

"would trigger the underwriter to notice that, and to ask for those documents to identify what the grant amount is, and to approve it." Counsel for Mr. Jacoby asked Mr.. Novy how he concluded that these documents showed "that this money was going to go to the buyer[;] not that it's just being disbursed and there was a grant, but that it was going to the buyer". Mr. Novy responded by stating that "I've never seen a transaction where grant funds benefitted the seller."

The Court first notes that Opinion 1(c) is stated in general terms – essentially that contracts for sale and HUD-1's provide always provide constructive notice to lenders that grant disbursements will be made to buyers. As to this broad scope, Mr. Novy did not articulate any general methodology, principle or experience from which he concludes that this is always the case. Therefore he may not so opine.

Narrowing his opinion to the a reasonable interpretation of Exhibits 326 and 330, Mr. Novy is apparently relying upon his experience in loan underwriting, approval and in consulting with lenders. There is no specific articulation of how or why a lender would understand from these documents that the grant documents are subject to lender approval, but such deficiency arguably goes to the weight of the opinion, and can be addressed at trial.

Accordingly, the Court finds that Mr. Novy may express Opinion 1(c) limited to his interpretation that he sales contract and HUD-1 statement in the transaction embodied by Exhibits 326 and 330 (*i.e.* the purchase of a property at 16381 E. 106th Way, Commerce City) would have put the lender on notice that grant funds were being disbursed to the buyer. He may not testify to any general rule or practice in the real estate industry.

>Opinion 3:   In the market environment during the time period charged in the Indictment, purchase transactions in which a property was purchased by an LLC using cash and quickly or immediately sold to an owner of the

LLC financed by a mortgage loan were not uncommon. . . .

The Government objects both to Mr. Novy's qualifications and to the absence of a reliable methodology or principle underlying it.

Mr. Novy testified that, over the course of his extensive career in real estate, he has seen this type of transaction – a cash purchase by an LLC, with the property then being sold to an investor in the LLC, subject to a lien – "many, many times" .  On cross-examination, he stated that his opinion was "based on my experience as a real estate broker in that time frame, buying and selling properties myself, and the marketplace, the heated marketplace that was prevalent at that time and my industry knowledge from a mortgage broker standpoint as well as an underwriter of what was going on, in addition to discussions, information I had received from other closing agents that I had worked with in the past, it's a cumulative view that these transactions were taking place."

The operative time frame the time period charged in the indictment, 2005-2006.  During this time period, Mr. Novy acknowledged he did not broker any real estate transactions and that in his own real estate purchasing activities never entailed the use of LLCs.  Thus, it appears that this opinion is derived from Mr. Novy's knowledge of  "the marketplace", or perhaps from his review of transactions in conjunction with other matters where he has been retained as an expert witness and about which he cannot testify due to confidentiality agreements.

The Committee Comments following FRE 702 are instructive with regard to experience as a basis for an opinion. They state, in pertinent part, " [i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached , why that experience is a sufficient basis for the opinion, and how that

experience is reliably applied to the facts". Mr. Novy has not done so; he has not identified any particular experience upon which his opinion as to the frequency of LLC-based transactions during 2005-2006 can reliably be premised. Because the record offers no clear explanation as to how Mr. Novy reached the conclusion that the LLC-based transactions described in Opinion 3 were "not uncommon," Opinion 3 is not admissible. The Objection is sustained.

> Opinion 4:   For subprime loans during the time period charged in the indictment, decisions by lenders to extend credit were based on factors that increased the sale price of the post-closing loan on the secondary market rather than upon buyer/borrower creditworthiness.

The Government challenges Mr. Novy's qualifications to render such an opinion, as well as his methodology for doing so.

The Court puts aside the challenge to Mr. Novy's qualifications for a moment and turns to the task of classifying this particular opinion. Typically, opinions can be divided into two distinct categories. The first, which the Court sometimes refers to as "derived opinions," are those that are reached by an expert through application of the Scientific Method. In other words, the expert formulates a hypothesis, devises one or more experiments or studies that will test that hypothesis, conducts the experiments or studies, and reaches a conclusion. Derived opinions are particularly susceptible to examination under Rule 702, as the Rule 702 analysis closely tracks the steps an expert will perform in deriving an opinion: devising a testing methodology, collecting facts and data necessary to carry out that testing, and applying the test to the facts and data collected.

To the extent Opinion 4 purports to be a derived opinion, the Court finds that Mr. Novy has not adequately articulated the methodology by which it was derived. Assuming that Mr.

Novy's initial hypothesis was "subprime lenders did not consider buyer creditworthiness when issuing loans," it is entirely unclear how Mr. Novy went about testing this hypothesis. He did not, for example, purport to collect sets of data for subprime loans granted and loans denied, then conduct a statistical analysis to ascertain the extent to which buyer creditworthiness was a material factor in determining which loans were granted and which were not. At best, the record indicates that Mr. Novy's "independent analysis" in this case consisted of "running property profile reports, looking at the lender and closing document files, identifying the approval conditions and documents related to that, analysis of the lender closing instructions, [and] the actions of the parties involved in the [entire] process." The description of documents and information reviewed, alone, is insufficient to support a derived opinion because it does not identify what information in the documents was considered or the method by which such information was evaluated.

      Mr. Novy also testified that he derived Opinion 4 from looking at various governmental reports relating to bank failures resulting from subprime lending irregularities. He stated that these reports concluded that these banks "issued loans without verification of certain information that was required in the loan [and] based their opinions primarily on credit scores[5] and ignored other factors." Although Fed. R. Evid. 703 permits experts to base opinions on facts and data that would be otherwise inadmissible on hearsay grounds, such as these reports, an expert witness cannot be used as a conduit for simply repeating otherwise inadmissible hearsay evidence. Thus the question is what the witness did with the information he obtained from other

---

[5]Mr. Novy repeatedly testified that, for subprime lenders, "the core factors [influencing the lending decision] would be the credit score and the asset, the appraisal of the property." It is not entirely clear to the Court how lenders' focus on a borrower's credit score conforms to Opinion 4's assertion that lenders did not consider borrower's "creditworthiness."

sources. This record does not indicate that Mr. Novy used the information in applying any methodology to the facts of this case. Instead, his opinion appears to simply repeat the contents or conclusions of the reports he reviewed. As such, it is not admissible as a "derived" opinion. [6]

The second type of opinion that expert witnesses often offer is one based on experience. As noted earlier, it is the commentary following Rule 702 that is most helpful in determining whether experience is a reliable foundation for an opinion. This turns on the nature and extent of the expert's experience and the closeness of the fit between such experience and the opinion.

There is some suggestion that Opinion 4 may be based upon Mr. Novy's experience. Although Mr. Novy has had a long and varied career in real estate funding, this opinion concerns specific practices in a very narrow window of time – subprime lending decisions in 2005 and 2006. Accordingly, only Mr. Novy's experience with subprime lending decisions in 2005 and 2006 is relevant.

The record is ambiguous as to his experience in this regard. The record reflects that,

---

[6] When asked to explain "what sort of research or studies" he had conducted with regard to lending practices during that time period, he explained that those studies were primarily the result of his work as an expert witness – that "My research and studies are based on discovery that it's – that is provided to me, deposition testimony, testimony that I've heard in trials, and my overall experience." Mr. Novy declined to discuss these matters in any greater detail, citing the existence of protective orders issued in those actions. Of course, to the extent that a witness is unwilling or unable to discuss the data and methodology underlying an opinion, that opinion will not be admissible under Rule 702. As the Supreme Court has emphasized, the Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Moreover, the Court would be reluctant to permit Mr. Novy to testify here based on analyses he did as an expert retained in other cases. The information that Mr. Novy would receive in his role as a retained expert witness might be very different from the information that he might seek out and consider when actually underwriting or analyzing a loan. Rule 702 is intended to exclude opinions that an expert obtains specifically in preparation for litigation (whether in this or any other case), and instead require opinions to result from "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

since 1997, Mr. Novy has been involved in a business providing "consulting, expert witness services, bank and lender underwriting, risk management, [and] analysis of lender documents." Because Opinion 4 is focused on lenders' decisions to grant or deny loans, perhaps the only task performed by Mr. Novy's consulting company that is germane to Opinion 4 is his involvement with "underwriting." He explained that the services he performed in this regard involved "re-underwriting" or "re-evaluating" loans that "have already been approved, funded, and closed." He has performed pre-closing underwriting services for banks "from time to time," but there is no evidence that he did so with regard to any subprime loans issued in 2005 or 2006.[7]

There is one, and only one, indication in the record that suggests that Mr. Novy has personal experience with lenders' decisionmaking on subprime loan applications in the 2005-2006 time period. During direct examination of Mr. Novy, the following exchange took place[8]:

> Q: Was there – was your work as a mortgage broker for Indy Mac, Wells Fargo during 2005 and 2006, does that contribute to your opinion here? If so, how?
>
> A: It does provide the foundation, knowing from speaking with the account representatives, the managers at the banks, Indy Mac bank, looking at their underwriting guidelines, and, again, looking at the transactions that I've evaluated, the cases that I'm currently retained on involving Indy Mac bank, all – they all add to my level of experience and understanding of these transactions.

The question posed to Mr. Novy includes an assertion of fact – that Mr. Novy "worked as a

---

[7] The Court has some doubt that "re-underwriting" loans that have already been issued is a valid means by which Mr. Novy can formulate an opinion as to what lenders considered when issuing the loan.

[8] The quoted text is from the Court's rough Livenote transcription, and has not been reviewed, corrected, or certified by the Court reporter. Absent such review and certification, the Court can only indicate that the quoted transcription is not inconsistent with the Court's own recollection of the testimony.

mortgage broker . . . during 2005 and 2006". The assertion is unsupported by anything else in the record, but Mr. Novy did not dispute this predicate when responding to the question. Assuming that Mr. Novy worked as a mortgage broker in 2005 and 2006, he could have had experiences in dealing with subprime loan funding, and through that experience could have perceived the types of factors that mortgage lenders considered. Thus, to the extent Mr. Novy is prepared to testify at trial that 1) he worked as a mortgage broker in 2005 and 2006, and 2) that he had experiences in dealing with subprime loan funding as part of his work in that time period, the foundation would be sufficient for Opinion 4. If, on the other hand, Mr. Novy does not establish that these facts, Opinion 4 lacks sufficient showing of experience to make it admissible.

> Opinion 5(a):   [with regard to residential real estate transactions in 2005 and 2006] . . . the fiduciary duties imposed by contract, and duties resulting from the custom and practice in the industry, relating to the actions of title closing agents.[9]

The Government objects to admission due to inadequacy of Mr. Novy's qualifications.

As best the Court can determine, Opinion 5(a) is similar to, but broader in scope than Opinion 1(b). For the same reasons set forth with regard to that opinion, the Court finds that Mr. Novy is qualified to offer Opinion 5(a), and subject to the same limitations.

> Opinion 5(b):   [with regard to residential real estate transactions in 2005-2006] . . . the contents, purpose, importance of initial and final loan application

---

[9]Mr. Jacoby's initial recitation of the opinions to be offered stated that this opinion would concern, with regard to residential real estate transactions in 2005-2006, "the roles, business interactions, responsibilities and duties, including fiduciary duties, of the borrower/buyer, seller, real estate agents/brokers, loan officers, mortgage brokers, appraisers, loan processors, loan underwriters, and other representative of the lender, and escrow/title companies, including their officers and assistants, during this process." After colloquy regarding several components of this statement of the Opinion and the Government's objections thereto, the Court understands the contested portion of the opinion to be revised as reflected above.

14

>>documents during this process, including the type and nature of information associated with these documents [ . . .][10].

The Government objects to admission due to inadequacy of Mr. Novy's qualifications.

As clarified by Mr. Jacoby, the purpose of Opinion 5(b) is to "walk through the residential loan process and identify the people and the paper, [a]nd explain to the jury, here is how the process goes, here is the players, here is the important paper." Limited in that fashion, the Court finds that Mr. Novy's experience in real estate transactions is sufficient qualification to permit him to testify in this manner. Because Mr. Jacoby has offered only a vague description as to the contents of this testimony, the Court expresses no opinion on whether particular assertions that may be embedded within that testimony are independently subject to Rule 702 consideration.

>>Opinion 5(d):   . . . specific underwriting factors, lender considerations [ ][11] in the loan approval process for various loan programs, including stated income verified asset (SIVA), stated income stated asset (SISA), no income no asset (NINA), alt. doc, no ratio, limited doc loan programs, and bank statement programs.

The Government objects to the sufficiency of Mr. Novy's qualifications to render this opinion.

When asked about his qualifications with regard to this opinion, Mr. Novy explained that the opinion was based on "a collection of my knowledge from the beginning of my career in 1978, involving my lending work as a loan officer, as a mortgage underwriter, as a mortgage

---

[10] Certain additional verbiage in this opinion was stricken by the Court as amounting to a statement of fact.

[11] The Court understands Mr. Jacoby to have withdrawn that portion of the opinion that sought to have Mr. Novy testify about the contents of specific written guidelines issued by lenders.

broker, as a bank manager, as a senior underwriter, training and classes that I've taken for my credentials, my FHA and VA training that was obtained along the way, my experience and training in closing practices, courses that I've taken in those areas as well, my work over the past five years analyzing or being retained on approximately 150 cases, encompassing well over 6,000 mortgage transactions." It is important to note, however, that all of the opinions relating to Opinion 5 expressly involve the 2005-2006 timeframe. Thus, Mr. Novy's experience prior to 2005-2006 is largely irrelevant to his qualifications to render Opinion 5(d).

Mr. Novy's generic recitation of the entirety of his professional experience as the basis for this opinion is also insufficient for another reason - Mr. Novy never testified as to any experience with regard to the particular loan products – SIVA loans, SISA loans, NINA loans, etc. – referenced in the opinion. The Court finds that Mr. Jacoby has not carried his burden of establishing Mr. Novy's qualifications to render Opinion 5(d). The objection is sustained and the opinion is excluded.

> Opinion 5(e):   . . . the underwriting, due diligence, pre-funding audit, internal & external quality control, and post-closing audit standards used by subprime lenders . . . .[12]

The Government objects to the sufficiency Mr. Novy's qualifications to offer this testimony.

Mr. Jacoby acknowledged that the conclusion of the Rule 702 hearing that he had not put on any evidence regarding this opinion in general or Mr. Novy's qualifications to render it. The Court agrees. Opinion 5(e) is excluded.

> Opinion 5(f):   . . . the competitive lending environment present in the residential real estate financing market in 2005 and 2006, including lender willingness to modify or waive loan approval conditions and lender preferences for

---

[12]At the hearing, Mr. Jacoby withdrew additional text relating to this opinion.

certain loan programs.

The Government objects to the sufficiency of Mr. Novy's qualifications to offer this testimony.

Once again, when asked about his qualifications to render this opinion, Mr. Novy responded with a generic recitation of his entire professional history: "It encompasses my work as a real estate broker, mortgage broker, mortgage underwriter, and my analysis of transactions over the past five years, again, encompassing the 6,000 plus files. And just to add to that, the lender guidelines and rate sheets and fliers and underwriting documents I have in my possession." Mr. Novy also cited to his work as an expert witness as informing him with regard to this issue.

The Court's prior discussion with regard to several of the prior opinions is applicable here. This testimony purports to describe lending practices occurring in 2005 and 2006. In essence, it is akin to percipient testimony based upon observations made at the time. Mr. Novy's broad career experience over decades does not qualify him to opine as to what happened in 2005 and 2006, and although he contends that he has special knowledge based on has work as an expert witness in other cases, because he has not (and cannot) describe that knowledge, he has not established his qualifications to provide this testimony. The objection is sustained and Opinion 5(f) is excluded.

Accordingly, the parties' Joint Motion **(# 319)** seeking a Rule 702 determination with regard to the proffered opinions is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. Defendants Derek Zar's and Suzanne Zar's *Pro Se* Motion to Dismiss Indictment **(# 413)** is **DENIED**. The Court having resolved all pending substantive motions, the Clerk of the Court

is directed to effectuate the transfer of this case to Judge Vratil as set forth in Docket # 437.

DATED this 26th day of July, 2012.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge